My name is Richard Rubin. With me at council table is Mitchell Leiner, trial counsel. We represent the plaintiff, appellant, Ronald Bishop. The question presented in this appeal is when, quote, liability arises, close quote, under section 1681P of the Fair Credit Reporting Act. In, two years ago, this case decided the seminal case under the Furnisher Liability Provision on which this case proceeds, Nelson v. Chase Manhattan Bank, and held that liability arises, that a condition, a condition precedent to liability arising is a dispute filed by a disgruntled consumer with a credit reporting agency. Subsequent case law has shown that liability arises approximately 30 days thereafter because it is, because the Furnisher is of information, is provided a 30-day window to report back to a credit reporting agency, and at that point, one can determine whether the investigation, whether the Furnisher has breached its duties. There is, however, as shown by Nelson in this court, no question, but liability cannot arise under an S-2B case, that's 1681S-2B, before a consumer disputes the information with a credit bureau. I just want to make sure that it seemed to me there was some tinkering with the statute and that there hasn't been any change to the limitations on liability under Provision A of what, 1681-2F? It's 1681S-2B, yes, Your Honor. On December, I believe it was the 4th of 2003, three months ago, the President signed FACTA, the Fair and Accurate Credit something amendments of 2003. If necessary, I can send a 28-J letter with the full citation. That's fine. There was an exact – in – three years ago, the Supreme Court decided TRW v. Andrews and found that there was no discovery rule, which, of course, is just precisely opposite of what the Court below held. And at that point, Senator Leahy introduced some amendments to correct, to overrule Andrews. Those amendments were adopted and added to FACTA. They are not relevant to this case. And I did not provide them in our 28-J letter I sent last week. They correct the Andrews – they expand the discovery rule to apply to a theft, an identity theft situation such as an Andrews, which is an access case. This is a Furnisher case. And I cannot – I don't believe there's any connection between the FACTA 1681P amendments in this case. However, you're absolutely right, Your Honor. The Congress also amended 1681S-2A, which is the accurate reporting provisions of FCRA. They're extensive amendments, none of which, of course, apply to this case either, but they emphasize the point in this case, and that is that accurate reporting is not where private rights of action lie. If, indeed, liability arose in this case in 1999 when the lower court held, then a consumer could file a lawsuit based simply on inaccurate reporting without meeting the Nelson standard of a – of the condition precedent of a dispute. And the unintended consequences are so far reaching, and consequences which – which, frankly, would – would favor consumers, but which are not supported by the statute. For example, in the Brown case, which was in my 28-J letter from last week, the district court in Maine pointed out that damages that accrue prior to the dispute are not recoverable. They are not proximately caused by a violation of S-2B because you have to have a condition precedent of a dispute. As this court held in Nelson, the credit bureaus and the furnishers mainly are given a free bite at the apple, what they call a filtering mechanism. And it works – this is part of the congressional scheme. But it has to be a dispute that's initiated with the credit reporting agency, not directly with the furnisher. Exactly.  And that is where to answer – to come back to the amendments from three months ago, there are additional rights that consumers have to dispute directly with the furnisher nowadays. Right. But there's no cause of action because they're under A. And that is the problem with the decision below. The – interestingly – Well, it's one of the problems. Yes. Yes, sir. I mean, they seem to think that the discovery statute period is a limitation rather than an expansion on a normal statute. Your Honor, that's right. One of the anomalies of the decision below and the bank's position here is that rather than having a discovery rule which we know tolls a statute of limitations, this decision accelerates a cause of action before it accrues. It makes no sense at all. And the bank has never been able to say when does liability arise. If it arose in 1999, how do they answer the question of the Nelson holding? How do they answer – how can you have a cause of action before it accrues? They can't answer that. They haven't answered it. The other basis of the bank's argument is the 1681P statutory discovery rule, which, again, tolls a statute of limitations. But its own condition is that it must be based on the willful misrepresentation of information required to be disclosed to a consumer. Can you just tell me, is this dispute as simple as it seems from reading this, that the bank said they made an error several years ago? Yes. And despite efforts to get them to tell that to the credit company, they won't tell it? Exactly. Is there anything more to this case? I mean, why is all this here? What's the problem? Well, the problem is that the negative entry on the credit report of Mr. Bishop, who is a businessman with extensive – he's a developer, was preventing him from getting his – it limited his credit. I understand that, but it seems that if they sent a letter to you that said they had made a mistake and you kept sending it back to them and they kept saying to the credit company the records were accurate, it seemed to me this dispute, whatever it is, could have been resolved. Maybe I should ask the judge. But I think that's right. I'm just curious about it. Well, this is the filtering mechanism that Judge Noonan mentioned in Nelson. This is why Congress says, no, you can't go to federal court. You have to try to resolve it first. It's an exhaustion requirement, a very wise one, because, frankly, this Court, I assume, or the district courts, do not want to see a lot of these cases. But when required to, Congress has said they will. But the filtering mechanism has so many effects, one of which is to make sure that only cases as clear as you're saying, Judge Reinhart, get to the federal courts. It is a question – and remember, as the Johnson decision from the Fourth Circuit two weeks ago points out, this is not a question, under this law, it's not a question of accurate information. That's for state district courts to deal with, maybe a declaratory judgment action. This is a case, this is a statute that deals with reasonable investigations. It's a procedural due process, if you want to say so, that is at issue here. You have two minutes left. Well, let me maintain a couple minutes for rebuttal, because I'd like to hear the answers also to the question about when does liability arise. Thank you. Thank you, Your Honor. May it please the Court, Matthew Hipler on behalf of U.S. Bancorp. Our answer to Mr. Rubin's question is simple, that the exception found in 1681p applies to this case. And I acknowledge that in this particular case, that it operates to shorten the time period in which Mr. Bishop had to present his question. I think we all find that argument very odd. Your Honor, I agree that it is an anomaly. It is an odd statutory interpretation that I am submitting to the Court is an accurate one. However, the language of the statute is clear. And in this particular case, Mr. Bishop knew in October of 1999, every piece of information that he had before him pointed to the fact that he could have gone to court. Are you saying on that day he could have gone to court? Yes, Your Honor, we are. Under this exception in 1681p. Well, how do you reconcile that with Nelson? Nelson merely reiterated what the statute says, particularly 1681i, which provides that there is the method by which a consumer has to go through the credit reporting agencies before you can attempt to hold liable a furnisher of information. But in this particular case, Mr. Bishop knew in October of 1999 that there was an inaccurate reporting on his credit report. And they've admitted such in the complaint. That's not enough. If you're going to do this strange theory of yours, you have to have some kind of misrepresentation that is other than inaccurate credit reporting. Because it can't be the same as inaccurate report or inaccurate information, because then it's opposite to Nelson. So it has to be some different kind of case. It has to be something other than just a misreporting of credit information. It has to be some kind of – I mean, it's still odd. But even to get to your odd argument, it has to be something different. We would submit that the language of 1681p provides that there's information that has to be given to the consumer. And the piece of information that had to be given to the consumer in this context is the information that was reported on Mr. Bishop's credit report in October of 1999 that he admits that he received. But what's the misrepresentation? The fact that there was the erroneous information. The fact that the bank reported that he did not pay in a timely fashion a particular loan. And based upon that, his statute of limitations began to run. And I would point out – It's not any kind of different – that's not a – that is just ordinary misreporting of information. That's – I mean, you have to have something different if you're going to toll the statute on this. It must mean something different. It has to be some other kind of strange misrepresentation. That's the only misrepresentation that we're arguing, Your Honor. Additionally, in this particular case, if the appellant is successful in arguing that the statute of limitations begins to run in October of 2000 rather than October of 1999 when he knew of the problem, in this particular instance it would operate to make the statute of limitations meaningless. And that is an absurd result that under this Court's jurisprudence they have argued – when you go to the intermediary, tell them about the problem, have them get in touch with the bank, and then when it doesn't work out, then there's liability. There's no liability just between the bank and the plaintiff here. Liability arises when the plaintiff goes to the intermediary, the intermediary reports the problem to the bank, the investigations take place. What's so odd about that? It's odd because it makes the statute of limitations meaningless. No, that's when the statute starts, when the three parties try to resolve it and they conduct the investigation, they go through the procedures. There's no liability just from the misreporting in itself. You know, I would think your client would be hesitant to adopt your rule in that case Any time there's a mistake in the reporting and in the bank's records, you can immediately go to court. I would think your client wouldn't like that very well. Well, that's a practical effect that perhaps U.S. Bank Corp. might take a different position on later down the line, but for the purposes of this appeal, Your Honor, it's our position that... You representing the bank, and we would hold you to that for all time. I understand, Your Honor. The problem here is that there would be nothing to prevent Mr. Bishop from waiting for one year and 11 months, never filing a lawsuit, and then simply requesting a reinvestigation through the credit reporting agency, and that would essentially buy him another two years. In that situation, that cuts against the entire purpose of having a statute of limitations, which is to have some degree of finality to the situation. And here, there would simply be none if Mr. Bishop's analysis of the FCRA would carry the day in this particular case. Can you tell me why there is such a problem over what appears to be the fact that the bank made a mistake, told him he made a mistake, and just kept refusing to correct it? Is that all there is to this case? In this particular case, Your Honor, the letter that Mr. Bishop really hangs his hat on in this case was actually a letter from the branch manager to the bank rather than to Mr. Bishop. And it's a very odd letter in that respect, and the bank has never been able to determine with any degree of finality whether or not there was originally an error. When the lawsuit was filed after Mr. Bishop submitted his reinvestigation request to the credit reporting agency, there was never any determination, as I said, that there was in fact an error. And once the lawsuit was filed, investigation continued. But then ultimately, the motion to dismiss was granted by the court below. So do you think after all these years, you ought to be able to decide one way or the other whether there was an error and save a lot of trouble? I understand the court's interest in this issue. Unfortunately, I don't have anything other than that to provide as to why the bank was not able to find whether or not there was an error. Are you still carrying this on the records as a delinquent payment? I don't know. I'm sure Mr. Bishop's attorneys know if that's the case. The bank cannot access under the FCRA Mr. Bishop's credit report without having a reason to do so. Okay. So I guess if the motion to the dismissal is overturned, then the district court will have to decide whether there was an error. Correct, Your Honor. That's the sum and substance of the Mr. Bishop's claim in this particular case. Maybe the bank could do that itself before the courts have to spend a lot more time on this. It seems that somehow, someday, you ought to be able to decide that if you want a court to decide whether you got the payment or not, you have to at least tell the court what you think, and you still don't know after all these years. Again, I understand the court's concern. However, it's our position. It's odd because the error was they credited it to the wrong account. That's Mr. Bishop's contention, Your Honor. Well, that's what the branch manager said. I agree. There's no contention that the branch manager's letter says what it says. However, in this particular instance, the other employees of the bank, the higher-ups, if you will, have never been able to determine, as I mentioned before, that there was in fact a bank. What a bank. They're never going to get my money. It's going to be an admission by somebody in a position to know, and then so you'll be in the position of having to develop the proof to rebut it. I understand, Your Honor. Well, good luck. Thank you very much. Thank you. Your Honor, just not to respond. I'm sorry? Have you ever heard of the saying, don't shoot a dead duck twice? No, I was my co-counsel said, leave it alone, and I will. But I did want to answer two questions that the Court asked. The reporting, if not, it had to do with matters that aren't of record, whether the matter is still being reported. The fact is that the credit bureau, Equifax, stepped in and stopped the reporting. They were co-counsels in this case, co-defendants in this case, and that was what happened. It's not being reported anymore, but not because of the bank. It was because Equifax got sued and they realized they had to do something. The second question, Judge Reinhart, you asked about why can't they figure this out. Another aspect of the Fourth Circuit's opinion two weeks ago in Johnson. You'll see there's a – I can't remember the exact page, but there's a – page 7 of the slip opinion. There's a footnote accompanying it, that even if – this is, again, this is old remand. It's not the issue here. But even if there was some question about whether Mr. Bishop made the payment or not, under S-2B1D – I'm sorry. Under 1681 S-2B1D, as happened – as the Fourth Circuit pointed out in Johnson, that even if they can't decide the answer, they have to tell the credit bureau that it's inconclusive. So it isn't – there's no requirement that there be some sort of investigation that reaches a certain determination. It's good enough just to say, look, we can't even tell if it's right. That's enough to clean up someone's credit report.  Thank you, counsel. Case just argued will be submitted. Second case for oral argument is Clement v. Turnoon.
judges: B. Fletcher, Reinhardt, Restani